IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Jason Alan Hertzog, ) | |
| ) | Civil Action No. 8:05-1776-MBS-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Horry County; Lt. Cunningham; Cpt. ) | |
| Susan Stafford; Major Joe Johnson; ) | |
| Director Tom Fox; Sheriff Phillip E. ) | |
| Thompson; Cpt. Hughes; Cpl S.K. ) | |
| Jones; and LPN Debbie Hipp, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on June 30, 2005, seeking damages for alleged civil rights violations. Named as defendants were Horry County; Tom Fox, Director of the Horry County Detention Center ("detention center")[1]; Phillip Thompson, Sheriff of Horry County; five correctional officers; and Debbie Hipp, a nurse at the detention center. On October 24, 2005, defendants Horry County, Thompson, Fox, Hughes, Jones, Cunningham, Stafford and Johnson filed a motion for summary judgment. By order filed October 25, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir., 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible

---

[1] The official name of the detention center in Horry County is J. Reuben Long Detention Center (Fox aff. at ¶ 1).

consequences if he failed to adequately respond to the motion. On November 4, 2005, defendant Hipp filed a separate motion for summary judgment. By order filed November 7, 2005, pursuant to *Roseboro*, the plaintiff was again advised of the summary judgment dismissal procedure. On November 29, 2005 and December 13, 2005, the plaintiff filed responses to the motions for summary judgment.

## **FACTS PRESENTED**

The plaintiff is currently an inmate at Lieber Correctional Institution in Ridgeville, South Carolina. This lawsuit contains claims stemming from the plaintiff's time at the Long Detention Center, where the plaintiff was held as a pretrial detainee. The plaintiff alleges that the conditions of his confinement amounted to cruel and unusual punishment. He also alleges that he has received inadequate care for his chronic medical conditions. The plaintiff also alleges that he was held in segregation for seven months without a disciplinary hearing. He alleges that he filed many grievances about the conditions at the detention center. The plaintiff seeks $5,000,000 in damages. He also seeks injunctive relief.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury

might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Cooper v. Dyke,* 814 F.2d 941, 948 (4th Cir. 1987). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53).

Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose. *Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

The plaintiff contends that the defendants were deliberately indifferent to plaintiff's "medical problems that were being caused by the conditions of confinement." (pl. memo. in support of motion to dismiss m.s.j. at 2). Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).[2] The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), *cert. denied*, *Grayson v. Royer*, 529 U.S. 1067 (2000).

---

[2]As discussed above, while pretrial detainees are afforded the protection of the Fourteenth Amendment rather than the Eighth Amendment, the deliberate indifference analysis is the same for both inmates and pretrial detainees. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

4

## ANALYSIS

**DEFENDANT HIPP'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff alleges that he complained in writing to the defendant Hipp, a nurse family practitioner at the detention center, about the lack of exercise, unbalanced meals and his muscle and joint problems. While not specific, the plaintiff appears to complain that he was denied medical attention. In her affidavit, however, defendant Hipp states that her review of the plaintiff's medical records show that he "was seen and treated by medical on multiple occasions for a host of complaints." (Hipp aff. at 1). It appears that the plaintiff was seen on a regular basis by physicians and nurses at the detention center, beginning on July 22, 2004, the day the plaintiff was first admitted to the facility.[3]

A claim of deliberate indifference to serious medical needs requires a greater showing than made here. The plaintiff quite simply has not shown that the defendant Hipp was indifferent to his medical needs. In fact, the medical records show that the plaintiff's medical condition and complaints were closely monitored by Ms. Hipp and other prison medical staff. As such, the plaintiff's claims are merely bald allegations which are insufficient to survive summary judgment. *See White v. Boyle*, 538 F.2d 1077 (4th Cir. 1976)(conclusory allegations are insufficient to avoid summary judgment).

Defendant Hipp has also raised the defense of qualified immunity, which requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). Because there is no evidence of any specific right of the plaintiff which was violated, it is unnecessary

---

[3] The plaintiff's extensive medical records were attached to defendant Hipp's affidavit in another case filed by the plaintiff, *Hertzog v. Horry County*, C/A No. 8:05-944-MBS-BHH. The undersigned filed a report and recommendation on January 17, 2006 recommending that summary judgment be granted in that case. By order dated February 7, 2006, the district court adopted this court's report and recommendation.

5

for this court to address the qualified immunity defense. *See Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998)(where the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS HORRY COUNTY, FOX, THOMPSON, CUNNINGHAM, STAFFORD, JOHNSON, HUGHES AND JONES**

The plaintiff has also alleged conditions of confinement claims against Horry County, Mr. Fox, the detention center director, Sheriff Thompson, and the other individual defendants. His complaint sets forth a laundry list of allegedly unconstitutional conditions, including the lack of proper exercise, infrequent haircuts, cold temperatures and lack of sunlight in the Maximum Security Unit cells, unsanitary conditions, limited access to laundry facilities, and lack of classification hearings following incarceration in maximum security.

The affidavit of defendant Johnson, the detention center deputy director, refutes the allegations of the plaintiff. Specifically, with regard to the plaintiff's claims regarding the conditions of the maximum security unit, Major Johnson acknowledges that the detention center is overcrowded at times, requiring inmates to sleep on mattresses on the floor, on a temporary basis until a bed becomes available. However, Major Johnson states that the plaintiff was never required to sleep directly on the floor, nor have the unsanitary conditions alleged by the plaintiff been allowed to exist in the detention center (Johnson aff. at 2). With regard to the plaintiff's claim that there was no sunlight in the maximum security unit, Major Johnson states that the windows were replaced with steel because inmates "repeatedly broke the windows out," but that some of the steel coverings were being replaced by plexiglass. Major Johnson also that the temperature of the detention center is constantly monitored and is not impacted by the window coverings. (Johnson aff. at 2-3).

The plaintiff also contends that the recreation and shower area are unclean and unsanitary. Major Johnson states that the area is cleaned regularly, and that the inmates are

given cleaning materials to keep their personal area clean as well. Additionally, there are plumbers on call in the event that drains become backed up; when that happens, the area is closed until it can be repaired and cleaned (Johnson aff. at 4-5).

The plaintiff also alleges that he has been denied exercise opportunities because he has been placed in fully body restraints during his exercise period. The plaintiff complains that these restrictions have caused "medical health problems." The disciplinary records submitted by the defendants, however, show that the plaintiff exhibited dangerous and disruptive behaviors while incarcerated at the detention center, resulting in numerous disciplinary citations, including disorderly conduct, threats to an officer, attempted escape, malicious injury to the courthouse, fighting, throwing liquids on an officer, and general disobedience (Johnson aff. at 5 -6). It is clear from these records, that the plaintiff's own behavior resulted in the continued security restrictions and his confinement in the maximum security unit.

The plaintiff also arguably makes a claim regarding the grievance procedure at the detention center. The plaintiff alleges that he filed grievances concerning the deprivation of his rights, as well as other complaints that have not been answered. From the record it appears that the plaintiff filed grievances on an almost daily basis and that the detention center staff made efforts to investigate and respond to these complaints (Johnson aff., Ex. 1). Morever, prisoners have no constitutional right to a grievance procedure. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995). A grievance procedure does not give rise to a protected liberty interest requiring protection under the Fourteenth Amendment. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

The plaintiff also appears to complain that he was held in maximum security for seven months without a hearing (comp. at 4). A review of the plaintiff's disciplinary records, however, shows that because of his constant behavioral infractions, his release back into the

7

general prison population was never really an option. Moreover, the disciplinary records do indicate that the plaintiff refused a relaxation in custody status on August 19, 2005. (Ex. 3). Thus, it appears that the plaintiff's classification was closely monitored and reconsidered but that his own behavior kept him in maximum security.

The other complaints raised by the plaintiff are, quite simply, either not supported by the record or not of constitutional proportion. There is no evidence that the plaintiff was injured in any way by the conditions which he alleges to be substandard. The plaintiff alleges that he has "back problems from sleeping on the floor, a hernia from getting up and down off the floor ... a contusion on his lower back and ... athletes feet and other bacterial rashes." (plaintiff's mem. at 8). However, he has submitted no evidence showing these alleged injuries. In order for a plaintiff to have a claim for unconstitutional conditions of confinement, "there must be evidence of a serious medical and emotional deterioration attributable to" the challenged condition. *Shrader v. White*, 761 F.2d 975, 979 (4th Cir. 1985). As emphasized by the Fourth Circuit:

> The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment.

*Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

The plaintiff has sued the sheriff of Horry County, as well as the director and deputy director of the detention center. As the defendants note, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978). A supervisor may be held liable for the constitutional violations committed by his subordinates, but only if the plaintiff can show that the supervisor tacitly authorized, or was deliberately indifferent to, the subordinates' actions. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). Supervisory liability for

8

constitutional injuries is not imposed on a *respondeat superior* basis absent an official policy or custom which results in illegal action. *Fisher v. Washington Metro Area Transit Authority*, 690 F.2d 1133, 1142-43 (4th Cir. 1982). In order to hold a supervisor liable for a constitutional injury, a plaintiff must establish three elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw*, 13 F.3d at 799. A plaintiff must generally produce evidence that the conduct complained of is prevalent or had been repeated on several occasions, and that the supervisor had refused to act "in the face of documented widespread abuse." *Id*. (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). The plaintiff here has simply not met this burden.

While the plaintiff has alleged that he wrote letters to these defendants putting them on notice as to his complaints, there is no evidence that any of the defendants were indifferent to the plaintiff's medical needs or to the claimed unconstitutional conditions of his confinement. Put another way, there is no evidence that a constitutional injury occurred, a prerequisite to supervisory liability claims. Accordingly, there can be no liability on a *respondeat superior* basis.

To the extent that the plaintiff's complaint can be perceived to state additional claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims. *See* 28 U.S.C. §1367(c).

The individual defendants also argue that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights

of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, it is not necessary for this court to reach the issue of qualified immunity.

The plaintiff has also named Horry County as a party in this matter. In order to state a claim for damages under 42 U.S.C. § 1983, an aggrieved party must sufficiently allege that he was injured by "the deprivation of any [of his] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law." While a county may be considered a "person" within the meaning of § 1983, in order to state a claim against a municipality or county under § 1983, the plaintiff must "identify a municipal 'policy' or 'custom' that caused plaintiff's injury." *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997)(county or other municipality may have 1983 liability if a "policy" of discrimination is shown); *see Monell v. New York City Dept. Of Social Servs.*,

436 U.S. 658, 694 (1978) (municipalities are liable under § 1983 only for "violations of federal law that occur pursuant to official governmental policy or custom). The plaintiff has put forward no evidence of any such county policy or custom. Accordingly, as to Horry County, summary judgment on this ground is appropriate.[4]

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the motion for summary judgment of defendant Debbie Hipp be granted. This court further recommends that the motion for summary judgment of defendants Horry County, Cunningham, Safford, Johnson, Fox, Thompson, Hughes, and Jones be granted.

IT IS SO RECOMMENDED.

s/ Bruce H. Hendricks
United States Magistrate Judge

June 1, 2006
Greenville, South Carolina

---

[4] Because the plaintiff is no longer housed at the detention center, his requests for injunctive relief are moot.